UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

Luis Alfredo Tipan Villegas and Wilson Efrain
Cunuhay Toaquiza, individually and on behalf of all
other employees similarly situated,

                                  Plaintiffs,

                -against-

D1 Installation Corp d/b/a Umbrella, Central
Construction Management LLC, Gregory
Kalamaras, Edwin Samaniego Caivinagua, and
Jorge Enciso,

                             Defendants.

-----------------------------------------------------------------X

Case No.

**FLSA COLLECTIVE ACTION**
**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs Luis Alfredo Tipan Villegas, and Wilson Efrain Cunuhay Toaquiza ("Plaintiffs")

individually and on behalf of all other employees similarly situated, by and through their attorneys,

Seo Law Group, PLLC, upon information and belief, and as against Defendants D1 Installation

Corp d/b/a Umbrella, Central Construction Management LLC, Gregory Kalamaras, Edwin

Samaniego Caivinagua,  and Jorge Enciso ("Defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and similarly situated current and former
employees who worked or work as construction workers/laborers for Defendants D1
Installation Corp d/b/a Umbrella (hereafter, also referred to as "D1") and Central Construction
Management LLC (hereafter, also referred to as "Central LLC"), seeking to recover damages
for Defendants' egregious violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*
("FLSA") and the New York Labor Law ("NYLL")  arising from Plaintiffs' employment with
Defendants at various worksites throughout New York.

2. Defendants D1 and Central LLC operate and/or operated as a construction business(es), and
the construction workers/laborers of the Defendants were assigned various tasks, including

assembling suspended scaffolds and pipes, working in the scaffolds, laying bricks, caulking, pointing, and welding.

3. Defendants paid Plaintiffs and other similarly situated and former construction workers/laborers pursuant to a similar, if not the same, compensation structure.

4. Defendants classified Plaintiffs and other similarly situated and former construction workers/laborers as non-exempt from overtime.

5. Plaintiffs bring this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA. Plaintiffs bring their claims under the NYLL on behalf of themselves, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. This Court has supplemental jurisdiction over Plaintiffs' other state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

## THE PARTIES

## PLAINTIFFS

### Plaintiff Luis Alfredo Tipan Villegas

11. Plaintiff Luis Alfredo Tipan Villegas ("Villegas") is an adult individual residing in Newark, New Jersey.

12. Plaintiff Villegas was employed by Defendants as a construction worker/laborer from approximately December 23, 2024, through August 28, 2025.

13. At all relevant times, Plaintiff Villegas was a "manual worker" within the meaning of the New York Labor Law ("NYLL") § 190(4) and NYLL § 191(1)(a).

14. Plaintiff Villegas consents to being a party Plaintiff pursuant to 29 U.S.C. § 216(b) and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

15. The consent to sue form for Plaintiff Villegas is attached hereto as **Exhibit 1**.

### Plaintiff Wilson Efrain Cunuhay Toaquiza

16. Plaintiff Wilson Efrain Cunuhay Toaquiza ("Toaquiza") is an adult individual residing in Bronx, New York.

17. Plaintiff Toaquiza was employed by Defendants as a construction worker/laborer from approximately April 14, 2025, through August 28, 2025.

18. At all relevant times, Plaintiff Toaquiza was a "manual worker" within the meaning of the New York Labor Law ("NYLL") § 190(4) and NYLL § 191(1)(a).

19. Plaintiff Toaquiza consents to being a party Plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

20. The consent to sue form for the Plaintiff Toaquiza is attached hereto as **Exhibit 2**.

## CORPORATE DEFENDANTS

**Corporate Defendant D1 Installation Corp d/b/a Umbrella** *(is believed to be a parent/successor corporation of Central Construction Management LLC or a joint employer of Central Construction Management LLC, or both)*

21. The Corporate Defendant, D1 Installation Corp d/b/a Umbrella, is a domestic business corporation existing under the laws of the State of New York with an address for service of process on file with the New York Secretary of State at 2089 Cedar Ave., Bronx, New York 10468.

22. Upon information and belief, Defendant D1, is either the successor corporation to Central Construction Management LLC. or is/was a co-operator of Central Construction Management *LLC*, with a principal executive office located at 2089 Cedar Ave., Bronx, New York 10468.

23. Defendant D1 operates as a construction company, and the construction workers/laborers of the Defendants were assigned various construction tasks.

24. Defendant D1 maintains a bank account with Wells Fargo Bank with an address register at 9 Indian Hill Ln, New Fairfield, CT 06812-2555 and issued a paycheck to its employees.

25. Upon information and belief, one of the individual Defendants, Edwin Samaniego Caivinagua, is register as a member of Wood Pecker Services LLC according to the Secretary of the Satate of Connecticut Certificate of Organization records.

26. Defendants Edwin Samaniego Caivinagua's company, Wood Pecker Services LLC, has its business registered at the same address where Defendant D1 maintains its bank account with Wells Fargo Bank, located at 9 Indian Hill Ln, New Fairfield, CT 06812-2555.

27. Defendants issued paychecks to Plaintiffs under the name of Defendant D1 bearing the address 9 Indian Hill, New Fairfield, CT 06812-2555, which, upon information and belief, is the same registered address as Wood Pecker Service LLC.

28. Upon information and belief, Defendant Elite Renovators is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

29. Defendant D1 is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL §§ 2, 190, and/or 651, that operates and profits from its construction business.

**Corporate Defendant Central Construction Management LLC** *(is believed to be a parent/successor corporation of D1 Installation Corp or a joint employer of D1 Installation Corp, or both)*

30. The Corporate Defendant, Central Construction Management LLC is a domestic limited liability company organized under the laws of the State of New York with an address for service of process on file with the New York Secretary of State at 25-04, 40th Avenue, Long Island City, NY, United States, 11101.

31. Upon information and belief, Defendant Central LLC, is either the successor corporation to Defendant, D1 Installation Corp or is/was a co-operator of Defendant, D1 Installation Corp, with a principal executive office located at 2089 Cedar Ave., Bronx, New York 10468 and/or 25-04, 40th Avenue, Long Island City, NY, United States, 11101.

32. Upon information and belief, Defendant Central LLC jointly hired the employees, together with D1, and D1 issued the payment to their employees whoever worked for Central LLC and/or D1.

33. Upon information and belief, Defendant Central LLC instructed Defendant D1 to dispatch its laborers to specific worksites throughout New York, including the site located at 153 East 57th Street, New York, New York 10022, and directed them to perform work for Defendants, including Plaintiffs.

34. Upon information and belief, Defendant Central LLC, either directly or through Defendant D1, dispatched personnel to supervise their laborers, including Plaintiffs, on-site for approximately half a day throughout Plaintiffs' employment.

35. Upon information and belief, Defendants primarily dispatched Defendant Jorge Enciso to supervise the progress of their laborers' work and to deliver payments if Defendants decided to pay their laborers.

36. Upon information and belief, Defendant Elite Renovators is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

37. Defendant Central LLC is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL §§ 2, 190, and/or 651, that operates and profits from its construction business.

38. At all times relevant hereto, Defendant Central LLC and Defendant D1 acted as a joint employer with respect to Plaintiffs, as both Defendants exercised control over Plaintiffs' employment.

## INDIVIDUAL DEFENDANTS

### Defendant Gregory Kalamaras

39. Upon information and belief, Defendant Gregory Kalamaras (hereafter, "Defendant Gregory") is an individual who has been the de facto and de jure owner, officer, and/or agent of Defendant Central LLC during the relevant time period, and he is sued individually.

40. Upon information and belief, Defendant Gregory has an ownership interest in Defendant Central LLC, and he is an owner, manager, and supervisor of the employees of Defendant Central LLC.

41. Defendant Gregory is registered as a "managing member" of Defendant Central LLC in the New York Department of State, Division of Corporations records.

42. Upon information and belief, Defendant Gregory is responsible for overseeing all daily operations of Defendants Central LLC and D1.

43. Upon information and belief, Defendant Gregory has power and authority over all the final personnel decisions of Defendants Central LLC and D1.

44. Upon information and belief, Defendant Gregory has final power over the firing and termination of the employees of Defendants Central LLC and D1, including Plaintiffs.

45. Upon information and belief, Defendant Gregory is responsible for determining, establishing, and paying the wages of all employees of Defendants Central LLC and D1, including the Plaintiffs, setting their work schedules, and maintaining all their employment records of the business.

46. Accordingly, at all relevant times hereto, Defendant Gregory was Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

**Defendant Edwin Samaniego Caivinagua**

47. Upon information and belief, Defendant Edwin Samaniego Caivinagua (hereafter, "Defendant Edwin") is an individual who has been the de facto and de jure owner, officer, and/or agent of Defendant D1 during the relevant time period, and he is sued individually.

48. Upon information and belief, Defendant Edwin has possessed and exercised operational control over Defendants D1 and/or Central LLC, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Edwin has a prominent role in the setting of wages for Defendants D1's and Central LLC's employees and hires and fires Defendants D1's and Central LLC's employees.

49. Upon information and belief, Defendant Edwin has ownership interest in Defendants D1 and Central LLC, and he is an owner, manager, and supervisor of all his employees and the employees of Defendants D1 and Central LLC.

50. Upon information and belief, Defendant Edwin manages all aspects of Defendants D1's and Central LLC's finances including handling the employees' payrolls, tougher with Defendant Gregory.

51. Upon information and belief, Defendants sometimes paid Plaintiffs by issuing bank checks bearing the address 9 Indian Hill Ln, New Fairfield, CT 06812-2555, where Wood Pecker Services LLC, a company in which Defendant Edwin serves as a member, is registered.

52. Accordingly, at all relevant times hereto, Defendant Edwin was Plaintiffs' employer within the meaning and the intent of the FLSA, and the NYLL.

8

**Defendant Jorge Enciso**

53. Upon information and belief, Defendant Jorge Enciso (hereafter, "Defendant Jorge") is an individual who has been the de facto agent and supervisor of Defendants D1 and Central LLC during the relevant time period, and he is sued individually.

54. Defendant Jorge has possessed and exercised operational control over Defendants D1's and Central LLC's daily operations, for example, he has at times relevant to this litigation directed the work of Defendants' employees, including Plaintiffs, established daily work assignments, communicated work schedules, and had the authority to hire and fire employees.

55. Defendant Jorge is known to Plaintiffs as the on-site supervisor and manager of construction operations at Defendants D1's and/or Central LLC's worksites.

56. Upon information and belief, Defendant Jorge utilized a group chat maintained on WhatsApp to communicate with Plaintiffs and other workers regarding work schedules and worksite assignments.

57. Upon information and belief, Defendant Jorge exercised the authority to hire and fire employees.

58. In a WhatsApp group, Defendant Jorge stated in Spanish to his employees, to the effect that: "Whoever does not arrive early tomorrow stays without work." When an employee responded that he could not work due to stomach pain, Defendant Jorge instructed him, to the effect that: "You no longer have work."

59. Accordingly, at all relevant times hereto, Defendant Jorge was Plaintiffs' employer within the meaning and the intent of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

9

60. Defendants operate a construction business. At all relevant times, Individual Defendants Gregory, Edwin, and Jorge have or had operational control over the Corporate Defendants, have or had an ownership or supervisory interest in the Corporate Defendants, and control or controlled significant functions of the Corporate Defendants.

61. Corporate Defendants and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

62. At relevant times, each Corporate Defendant possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

63. Corporate Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' and all similarly situated individuals' employers within the meaning of 29 U.S.C. § 201 et seq. and the NYLL.

64. Upon information and belief, Defendant D1 was a subcontractor, parent and/or successor operation, or a joint employer of Defendant Central LLC or both.

65. Upon information and belief, Central LLC often paid its construction workers and laborers, including Plaintiffs, through Defendant D1.

66. Upon information and belief, Defendant Central LLC assigned construction tasks to Defendant D1 and dispatched its own personnel to the worksites where Plaintiffs worked.

67. Upon information and belief, Defendant Central LLC often dispatched Defendant Jorge to supervise Defendants' laborers' work, including Plaintiffs', and to deliver payment through Defendant Jorge.

68. Defendant D1 and Defendant Central LLC functioned as a single integrated enterprise during Plaintiffs' employment, in that they shared control over Plaintiffs' wages, work schedules, and conditions of employment.

69. Specifically, Defendant Central LLC exercised supervisory authority over the work performed at Defendant D1's worksites; and the funds used to compensate Plaintiffs originated from Defendant Central LLC and were primarily paid to its laborers through Defendant D1.

70. Upon information and belief, the Corporate Defendants shared their business name as "Umbrella" and operate their businesses as a joint employer and are subject to the same policies and procedures.

71. At all relevant times, Individual Defendants were Plaintiffs' employers within the meaning of the FLSA, NYLL, and other law.

72. Individual Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

73. Individual Defendants supervised Plaintiffs' work schedules and conditions of their employment.

74. Individual Defendants also determined the rate and method of payment for Plaintiffs and other similarly situated employees.

75. Individual Defendants also controlled and guided what limited recordkeeping that took place, which Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

**PLAINTIFFS**

76. During Plaintiffs' employment with Defendants, Plaintiffs worked under the direct supervision of Defendants Edwin Samaniego Caivinagua and Jorge Enciso on a daily basis at the worksite.

77. Defendants, through Defendants D1 and/or Central LLC, also assigned their employees to be present at the worksites, where they directly managed and supervised the employees, including Plaintiffs.

78. As construction laborers, Plaintiffs were assigned various tasks as construction workers, including assembling suspended scaffolds and pipes, working on the scaffolds, laying bricks, caulking, pointing, welding, making repairs to the exterior facade of buildings, removing caulking from windows, and replacing broken bricks.

**As to Plaintiff Villegas**

79. Plaintiff Villegas was employed by Defendants as a construction laborer from December 23, 2024, to approximately August 28, 2025.

80. During Plaintiff Villegas's work period from December 23, 2024, to August 27, 2025, he worked from 8:30 a.m. to 5:00 p.m., Monday through Friday, at 153 East 57th Street, New York, New York 10022.

81. On August 28, 2025, Defendants assigned Plaintiff Villegas to work at 535 West 110th St., New York, NY 10025, where he worked from 8:00 a.m. to 6:00 p.m.

82. Although Defendants nominally designated a 30-minute lunch break, Plaintiff Villegas was not permitted to take an uninterrupted meal period. Due to Defendants' established practice of issuing paychecks that frequently lacked sufficient funds, Plaintiff Villegas was compelled during his purported lunch period to travel to Defendants' bank to verify whether Defendants

maintained sufficient funds in their account to ensure that their paychecks would not be returned for insufficient funds.

83. As a result, Plaintiff Villegas never had any uninterrupted meal break throughout his employment with Defendants.

84. Plaintiff Villegas regularly worked approximately eight and one-half (8.5) hours per day and approximately forty-two and one-half (42.5) hours per week during this period, including approximately two and one-half (2.5) hours of overtime per week.

85. Throughout Plaintiff Villegas's employment, Defendants unilaterally calculated Plaintiff Villegas's pay at a flat rate of $1,150 per workweek, regardless of how many hours Plaintiff Villegas actually worked.

86. Moreover, Defendants paid Plaintiff Villegas only when they were willing and/or able to do so, and only if they decided to pay him at all.

87. Defendants maintained a practice of paying workers one week behind the applicable work period and withholding an additional one (1) week of wages as a purported "deposit." Defendants withheld the "deposit" and they never returned the money back to Plaintiff Villegas.

88. Although Defendants were supposed to pay Plaintiff Villegas on a weekly basis on every Tuesdays, but they frequently failed to pay Plaintiff Villegas on time if they ever decide to pay Plaintiff Villegas.

89. On or about August 12, 2025, Defendants ceased paying Plaintiff Villegas at all.

90. On or around August 28, 2025, Plaintiff Villegas complaint to Defendants, thought Defendant Jorge regarding the unpaid wages, but Defendants refused to pay and still failed to pay any compensation to Plaintiff Villegas.

91. Throughout Plaintiff Villegas employment, Defendants did not pay Plaintiff Villegas proper overtime compensation for hours he worked over forty (40) each workweek according to federal and state laws.

92. Moreover, Defendants further failed to pay Plaintiff Villegas a total of at least three (3) weeks of earned wages, consisting of (i) the final two (2) weeks and two (2) days of unpaid work, (ii) one (1) additional week of wages previously withheld as a "deposit," and (iii) his overtime compensation for each hour that he worked over 40 hours per week.

93. During the periods in which Defendants failed to pay Plaintiff Villegas any wages whatsoever for work performed, Defendants also failed to pay Plaintiff Villegas even the applicable minimum wage as required by the FLSA and the NYLL.

**As to Plaintiff Toaquiza**

94. Plaintiff Toaquiza was employed by Defendants as a construction laborer from April 14, 2025, to approximately August 28, 2025.

95. During Plaintiff Toaquiza's work period from April 14, 2025, through August 27, 2025, he regularly worked from 8:30 a.m. to 5:00 p.m., Monday through Friday, at 153 East 57th Street, New York, New York 10022, except that he worked only a half day on August 20, 2025, and did not work on August 21, 2025.

96. On August 28, 2025, Defendants assigned Plaintiff Toaquiza to work at 95 Park Avenue, New York, NY 10016, where he worked from 7:00 a.m. to 4:30 p.m.

97. Although Defendants nominally designated a 30-minute lunch break, Plaintiff Toaquiza was not permitted to take an uninterrupted meal break throughout his employment with Defendants.

14

98. Plaintiff Toaquiza regularly worked approximately eight and one-half (8.5) hours per day and approximately forty-two and one-half (42.5) hours per week during this period, including approximately two and one-half (2.5) hours of overtime per week.

99. Throughout Plaintiff Toaquiza's employment, Defendants unilaterally calculated Plaintiff Toaquiza's pay at a flat rate of $900 per workweek, regardless of how many hours Plaintiff Toaquiza actually worked.

100. Moreover, Defendants paid Plaintiff Toaquiza only when they were willing and/or able to do so, and only if they decided to pay him at all.

101. Defendants maintained a practice of paying workers one week behind the applicable work period and withholding an additional one (1) week of wages as a purported "deposit." Defendants withheld the "deposit" and they never returned the money back to Plaintiff Toaquiza.

102. Although Defendants were supposed to pay Plaintiff Toaquiza oon a weekly basis on every Tuesdays, but they frequently failed to pay Plaintiff Toaquiza o on time if they ever decide to pay Plaintiff Toaquiza o.

103. On or about August 12, 2025, Defendants ceased paying Plaintiff Toaquiza at all.

104. On or around August 28, 2025, Plaintiff Toaquiza requested payment of his unpaid wages and complained about Defendants' failure to pay him; however, Defendants have failed to pay such wages to date.

105. Upon information and belief, Defendant Edwin used telephone number (203) 417-3818 to communicate with Plaintiffs regarding their employment. Plaintiff Toaquiza repeatedly requested Defendants to receive his compensation, primarily through Defendant Edwin, via WhatsApp messages.

106. Plaintiff Toaquiza sent at least six or seven messages to Defendants, including on February 10, 2025, October 17, 2025, October 22, 2025, and November 5, 2025.

107. Defendant Edwin responded to Plaintiff Toaquiza's messages by asking how many days he worked but did not receive any compensation, but Defendant Edwin eventually remained nonresponsive soon after Plaintiff Toaquiza responded to Defendant Edwin, and Defendants failed to pay Plaintiff Toaquiza.

108. Throughout Plaintiff Toaquiza's employment, Defendants did not pay Plaintiff Toaquiza proper overtime compensation for the hours he worked over forty (40) each workweek according to federal and state laws.

109. Moreover, Defendants failed to pay Plaintiff Toaquiza a total of approximately three (3) weeks of earned wages, consisting of (i) the final two (2) weeks and two (2) days of unpaid work, and (ii) one (1) additional week of wages previously withheld as a "deposit."

110. During the periods in which Defendants failed to pay Plaintiff Toaquiza any wages whatsoever for work performed, Defendants also failed to pay Plaintiff Toaquiza even the applicable minimum wage as required by the FLSA and the NYLL.

**Defendants' General Employment Practices**

111. Defendants regularly required Plaintiffs to work without paying them all wages earned, in violation of federal and state labor laws.

112. Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them appropriate overtime compensation at the rate of one and one-half times their regular rate of pay, as required by federal and state laws. Defendants' flat weekly rate structure did not account for or compensate Plaintiffs for the overtime hours they were required to work each week.

113.   Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and the NYLL, by failing to pay all wages earned for hours worked, failing to timely remit wages, and unlawfully withholding wages as a purported "deposit."

114.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all hours worked and not receiving wages on a timely basis as required by applicable federal and state law.

115.   During periods in which Defendants failed to pay Plaintiffs any wages whatsoever for work performed, Defendants also failed to pay Plaintiffs even the applicable minimum wage as required by the FLSA and the NYLL.

116.   Defendants failed to provide Plaintiffs, at the time of hiring, with a written wage notice and acknowledgment in Plaintiffs' primary language, Spanish, as required by NYLL § 195(1).

117.   Defendants failed to furnish Plaintiffs with accurate wage statements with each payment of wages, as required by NYLL § 195(3), including statements reflecting, among other things, the applicable pay period, rates of pay, and hours worked.

118.   Defendants failed to maintain and/or provide accurate payroll documentation and wage-related records required by applicable law.

119.   Defendants treated and compensated Plaintiffs and the FLSA Collective Action Plaintiffs in the same or substantially similar manner.

120.   Upon information and belief, these practices by Defendants were done willfully to avoid paying Plaintiffs and the Collective Action Members properly for all hours worked and to conceal Defendants' violations of applicable wage and hour laws.

121.   Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices required by NYLL §§ 195(1) and 195(3).

17

## COLLECTIVE ACTION ALLEGATIONS

122.   Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, specifically since in or around August 2025, to Plaintiffs or other similarly situated employees.

123.   Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees all wages earned, including wages for the final weeks of their employment and wages unlawfully withheld as a purported "deposit," in violation of the FLSA.

124.   Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and other similarly situated employees their wages on the regular payday for the pay period in which the workweek ended, in violation of the FLSA and the supporting federal Department of Labor Regulations.

125.   Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations..

126.   Plaintiffs bring this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants as construction workers/laborers at each of their business locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period"), and who failed to receive all wages earned, including minimum wages and/or overtime compensation for all hours worked in excess of forty (40) hours per week, and have been subject to the same common decision,

policy, and plan to not provide required wage notices at the time of hiring, in contravention of federal and state labor laws (the "Collective Action Members" or "D1 Construction Workers/Laborers").

127. Upon information and belief, the Collective Action Members are so numerous that joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action Members who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

128. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and collective action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

129. This action should be certified as a collective action because the prosecution of separate actions by individual members of the collective action would risk creating either inconsistent or varying adjudications with respect to individual members of this collective that would as a practical matter be dispositive of the interests of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

130. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore,

inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

131. Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

   a. Whether the Defendants employed Collective Action Members within the meaning of the FLSA;

   b. Whether the Defendants failed to pay the Collective Action Members all wages earned for work performed, including wages for the final weeks of their employment;

   c. Whether the Defendants unlawfully withheld wages from the Collective Action Members as a purported "deposit" without legal basis;

   d. Whether the Defendants failed to pay the Collective Action Members their wages on the regular payday for the pay period in which the workweek ended, in violation of the FLSA;

   e. Whether the Defendants failed to pay the Collective Action Members their wages on a timely weekly basis, in violation of NYLL § 191(1)(a);

   f. Whether the Defendants failed to pay the Collective Action Members overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek, including hours during which Plaintiffs were denied an uninterrupted meal period and were instead required to travel

to Defendants' bank to verify the sufficiency of Defendants' account balance, in violation of the FLSA and NYLL;

g.  Whether the Defendants failed to pay the Collective Action Members the applicable minimum wage for all hours worked during periods in which Defendants paid no wages, in violation of the FLSA and NYLL;

h.  Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

i.  Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and

j.  Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements, and attorneys' fees.

132.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

133.  Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

**STATEMENT OF CLAIM**
**COUNT I**
**[Violations of the Fair Labor Standards Act—Unpaid Wages**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

134.  Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

21

135.   Defendants employed Plaintiffs and the Collective Action Members and willfully failed to compensate them for all wages earned, including wages for the final weeks of their employment and wages unlawfully withheld as a purported "deposit," in violation of the FLSA.

136.   Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

137.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

138.   Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

139.   Due to Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members are entitled to recover their unpaid wages in amounts to be determined at trial, liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of Plaintiffs and the FLSA Collective]

140.   Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

141.   At all times relevant, Plaintiffs and the Collective Action Members were each an "employee" within the meaning of 29 U.S.C. §§ 201 *et seq.*

142.  At all times relevant, Defendants have been employers of Plaintiffs and the Collective Action Members and engaged in commerce and/or the production of goods for commerce, within the meaning of 29 U.S.C. §§ 201 *et seq.*

143.  Plaintiffs Villegas and Toaquiza were employed by Defendants to work, as construction laborers, while performing related construction duties for the Defendants from in or about December 23, 2024, through August 28, 2025, and from on or about April 14, 2025, through August 28, 2025, respectively.

144.  Beginning in or around August 12, 2025, Defendants refused to pay Plaintiffs *at all* for the weeks that they worked. Despite this, Plaintiffs consistently complained and requested for the payment they worked in the WhatsApp Group.

145.   Regardless of Plaintiffs' repeated requests in the WhatsApp Group which Defendants Jorge and Edwin were in, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed to date.

146.  Defendants have failed to pay Plaintiffs the Collective Action Members' minimum wages to which they are entitled under the FLSA.

147.  Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

148.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

149.  Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

150.    Due to Defendants' willful violations of the FLSA, Plaintiffs and the Collective Action Members have suffered damages by not being paid the applicable minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## COUNT III
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiffs]

151.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

152.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

153.    At all times relevant, Plaintiffs have been employees of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

154.    Plaintiffs Villegas and Toaquiza were employed by Defendants to work, as construction laborers, while performing related construction duties for the Defendants from in or about December 23, 2024, through August 28, 2025, and from on or about April 14, 2025, through August 28, 2025, respectively.

155.    Beginning in or around August 12, 2025, Defendants refused to pay Plaintiffs at all for the weeks that they worked. Despite this, Plaintiffs consistently complained and requested for the payment they worked in the WhatsApp Group.

24

156.   Regardless of Plaintiffs' repeated requests in the WhatsApp Group which Defendants Jorge and Edwin were in, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed to date.

157.   Defendants have failed to pay Plaintiffs the minimum wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

158.   Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

159.   Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid minimum wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT IV**
**[Violation of New York Labor Law—Frequency of Payment**
**Brought on behalf of Plaintiffs]**

160.   Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

161.   At all relevant times, Plaintiffs were "manual workers" within the meaning of NYLL § 190(4) and NYLL § 191(1)(a).

162.   The NYLL requires employers of manual workers to pay their wages weekly and not later than seven (7) calendar days after the end of the week in which such wages were earned, pursuant to NYLL § 191(1)(a).

163.   Defendants willfully failed to pay Plaintiffs their wages on a timely weekly basis. Instead, Defendants maintained a practice of paying workers one week behind the applicable work

period, withheld an additional week of wages as a purported "deposit," and at times delayed payment by two (2) weeks, fifteen (15) days, or as long as one (1) month.

164.    Defendants' failure to timely pay Plaintiffs their wages was not in good faith.

165.    By Defendants' failure to pay Plaintiffs their wages at the frequency required by law, Defendants willfully violated NYLL § 191(1)(a) and the supporting New York State Department of Labor Regulations.

166.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, unpaid wages originating from Defendants' failure to timely pay wages, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## COUNT V
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiffs]

167.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

168.    Defendants have willfully failed to supply Plaintiffs with wage notices, as required by NYLL, Article 6, § 195(1), in English, or in the language identified by Plaintiffs as their primary language, Spanish, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different;

26

the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

169.   Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

170.   Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $5,000 each, plus reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-b).

## COUNT VI
### [Violation of New York Labor Law—Wage Statement Requirement Brought on behalf of Plaintiffs]

171.   Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

172.   Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

173.   Through their knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

27

174. Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover from Defendants liquidated damages of $5,000 each, plus reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court enter judgment against Defendants and grant the following relief:

i        An order restraining Defendants from any retaliation against Plaintiffs and FLSA Collective Action Members for participation in any form in this litigation;

ii       Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the Fair Labor Standards Act and its supporting regulations, and the New York Labor Law, Articles 6 and 19, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations;

iii      Designation of this action as an FLSA collective action on behalf of the Plaintiffs and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv       Unpaid wages for all hours worked, including but not limited to wages for the final weeks of Plaintiffs' employment and wages unlawfully withheld by Defendants pursuant to the FLSA and NYLL, plus an equal amount in liquidated damages;

28

v        Unpaid overtime compensation at the rate of one and one-half times Plaintiffs' and Collective Action Members' regular rate of pay for all hours worked in excess of forty (40) hours per workweek, pursuant to the FLSA and NYLL, plus an equal amount in liquidated damages;

vi       Unpaid minimum wages for all periods during which Defendants failed to pay Plaintiffs and Collective Action Members any wages whatsoever for work performed, pursuant to the FLSA and NYLL, plus an equal amount in liquidated damages;

vii      Compensation for Defendants' failure to timely pay Plaintiffs and Collective Action Members their wages on a weekly basis as required by the FLSA and NYLL § 191(1)(a), plus an equal amount in liquidated damages;

viii     Damages pursuant to New York Labor Law §§ 195(1), (3), and 198;

ix       Pre- and post-judgment interest as permitted by law;

x        All attorneys' fees incurred in prosecuting these claims;

xi       All costs incurred in prosecuting these claims; and

xii      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  Flushing, New York                          **SEO LAW GROUP, PLLC**
            April 20, 2026

By:      /s/*Diana Y. Seo*_____
         Diana Seo, Esq.
         136-68 Roosevelt Ave., Suite 726
         Flushing, New York 11354
         Telephone: (718) 500-3340
         Email: diana@seolawgroup.com
         *Attorneys for Plaintiffs*

29

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: April 20, 2026